UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LON BIASCO,<br><br>              Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>              Defendants. | Case No. C19-1854-RSL-MLP<br><br>REPORT AND RECOMMENDATION |

## I.      INTRODUCTION

This matter is before the Court on Defendant's Secretary of the U.S. Department of Homeland Security ("DHS") Alejandro Mayorkas ("Defendant") Motion for Summary Judgment ("Defendant's Motion").[1] (Def.'s Mot. (dkt. # 36).) Plaintiff Lon Biasco, proceeding *pro se*, filed an opposition (Pl.'s Resp. (dkt. # 38)), and Defendant filed a reply (Def.'s Reply (dkt. # 39)).[2]

---

[1] Defendant contends claims against DHS should be dismissed. (Def.'s Mot. at 1 n. 1.) In Title VII cases, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). Accordingly, the Court recommends claims against DHS be dismissed.

[2] Defendant's Reply includes a motion to strike several exhibits and portions of exhibits attached to Mr. Biasco's opposition as "redundant" because they are not relevant to Defendant's Motion. (Def.'s Reply at 6-7 (quoting Fed. R. Civ. P. 12(f)).) While certain exhibits may address issues Defendant has conceded

REPORT AND RECOMMENDATION - 1

1  Having considered the parties' submissions, the governing law, and the balance of the
2  record, the Court recommends Defendant's Motion be GRANTED.

3  **II.  BACKGROUND**

4  Mr. Biasco is an employee of DHS and its constituent agency the Federal Emergency
5  Management Agency ("FEMA"). (Compl. (dkt. # 1) at 8, ¶ 1.) Mr. Biasco filed an "Individual
6  Complaint of Employment Discrimination" with DHS on September 6, 2016, (the "September
7  2016 Claims") complaining of "a pattern of retaliatory harassment since 2011 . . . Recently comp
8  travel pay was withheld. I have discussed with the EEO counselor numerous events since 2011."
9  (Pl.'s Resp., Ex. 11 (dkt. # 38-12) at 2.)[3]

10  On October 28, 2016, Mr. Biasco's 2016 third quarter performance review ("2016 Third
11  Quarter Review") was issued. (*See* Compl. at 5.) On December 30, 2016, his 2016 final
12  performance review ("2016 Final Review") was issued, and Mr. Biasco signed it on January 30,
13  2017. (2016 Final Review (dkt. # 37-2).)

14  The U.S. Equal Employment Opportunity Commission ("EEOC") completed its
15  investigation of Mr. Biasco's September 2016 Claims and issued Mr. Biasco a right-to-sue letter
16  ("EEOC Letter") on August 30, 2019. (EEOC Letter (Compl., Ex. 1 at 12-15).) On November
17  15, 2019, Mr. Biasco filed the instant action before this Court, alleging violation of Title VII of
18  the Civil Rights Act of 1964. (Compl. at 3.) In his Complaint, Mr. Biasco alleged "[r]etaliation"
19  and identified as "discriminatory acts" his 2016 Third Quarter Review and his 2016 Final

---

(*see, e.g.*, dkt. # 38-5), others are key to disputed issues (*see, e.g.*, dkt. # 38-15). Accordingly, the Court DENIES Defendant's motion to strike.

[3] Mr. Biasco did not provide a declaration authenticating the exhibits he provided with his response. *See* Fed. R. Evid. 901. However, Defendant has not challenged the authenticity of the documents.

REPORT AND RECOMMENDATION - 2

Review. (*Id.* at 4-5.) He alleged that "[r]educed performance review . . . impacts bonuses, future employment opportunities, and reduction in force (RIF) processes." (*Id.* at 9, ¶ 7.)

Defendant seeks dismissal of Mr. Biasco's claims because he failed to exhaust his administrative remedies and because he has not identified an adverse employment action. (Def.'s Mot.)

### III.   DISCUSSION

#### A.   Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's

responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

The Court notes that it holds *pro se* plaintiffs to less stringent standards than represented plaintiffs and *pro se* briefing must be liberally construed. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**B.     2016 Third Quarter Review**

Defendant contends claims related to Mr. Biasco's 2016 Third Quarter Review must be dismissed because he failed to initiate required EEO procedures within 45 days. (Def.'s Mot. at 4-6.)

EEO regulations require initiating contact with an EEO counselor within 45 days:

> (a) Aggrieved persons who believe they have been discriminated[4] against . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> > (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
> >
> > (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows . . . that he or she did not know and reasonably should not have been known

---

[4] "Complaints alleging retaliation prohibited by [Title VII] are considered to be complaints of discrimination for purposes of this part." 29 C.F.R. § 1614.103.

REPORT AND RECOMMENDATION - 4

|   |   |
|---|---|
| 1 | that the discriminatory matter or personnel action occurred, . . . or |
| 2 | for other reasons considered sufficient by the agency or the Commission. |

29 C.F.R. § 1614.105. "[F]ailure to comply with this regulation has been held to be fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).

Defendant contends claims related to Mr. Biasco's 2016 Third Quarter Review are time-barred because the review was issued October 28, 2016, and Mr. Biasco did not meet the counseling requirement by December 12, 2016. (Def.'s Mot. at 4.) Mr. Biasco does not dispute Defendant's contention and states that this action brings claims related only to the 2016 Final Review. (Pl.'s Resp. at 3.) Accordingly, the Court recommends Defendant's Motion be granted with respect to any claims based on the 2016 Third Quarter Review.

### C. 2016 Final Review

Mr. Biasco's 2016 Final Review was issued December 30, 2016, and Mr. Biasco signed it on January 30, 2017. (*See* 2016 Final Review.) Mr. Biasco received an overall rating of "Exceeded Expectations," which is the second highest rating. (*Id*.) The highest is "Achieved Excellence." (*Id*.) Defendant contends claims related to the 2016 Final Review must be dismissed because Mr. Biasco has failed to identify any retaliatory employment action and has failed to exhaust his administrative remedies. (Def.'s Mot. at 6-9.)

To establish a valid retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000). For purposes of the instant motion, Defendant challenges only the second element. (Def.'s Mot. at 8.)

          *1.     Adverse Employment Action*

Defendant contends summary judgment is warranted because Mr. Biasco cannot establish that his 2016 Final Review constituted an adverse employment action. (Def.'s Mot. at 8-9.) Mr. Biasco counters he would have received an additional $750 award if he had been rated "Achieved Excellence." (Pl.'s Resp. at 10.) He argues that both the "loss of bonus" and the "negative review" itself were adverse employment actions.[5] (*Id.* at 11.)

To establish an adverse employment action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means the action may have dissuaded "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *see also Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000) (An adverse employment action is one that is "reasonably likely to deter employees from engaging in protected activity.").

                  i.     Negative Review

Relying on *Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997), Mr. Biasco argues that a negative performance evaluation is an adverse employment action, regardless of whether he suffered any resulting harm. (Pl.'s Resp. at 10.) In *Hashimoto*, after the plaintiff employee was terminated and sought a job with a different employer, the defendant provided a "retaliatory negative job reference" to the prospective employer. 118 F.3d at 675. Although the fact-finder found the plaintiff would not have been hired anyway, the Ninth Circuit held that "dissemination of the negative job reference" was an adverse employment action. *Id.* at 674.

---

[5] Although Mr. Biasco also alleged "impacts [on] future employment opportunities [and] reduction in force (RIF) processes" in his Complaint, in response to this summary judgment motion he does not argue that these could constitute adverse employment actions. (*See* Compl. at 9, ¶ 7.)

REPORT AND RECOMMENDATION - 6

In *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000), the Ninth Circuit further reinforced that its holding in *Hashimoto* was limited to negative reviews disseminated beyond the immediate workplace. Although "a retaliatory negative job reference does not itself inflict tangible employment harm because it requires a prospective employer's subsequent, adverse action in response to the reference to create the employment harm[,]" in order to serve the purposes of Title VII, the court considers "disseminating a negative job reference" to be an adverse employment action "even if it does not affect a decision not to hire the victim." *Kortan*, 217 F.3d at 1113. In *Kortan*, the court rejected the plaintiff's argument that she was not required to show tangible injury, because her supervisor's retaliatory "evaluation was not disseminated beyond [a higher supervisor], who corrected it[.]" *Id*. Because the plaintiff showed no tangible harm, she "failed to show an adverse employment action." *Id*.

Here, there is no evidence Mr. Biasco's 2016 Final Review was disseminated to any prospective employer. In any event, it is also doubtful that the rating could be considered negative. *See Lyons*, 307 F.3d at 1118 (holding that a "fully successful" rating, which was "the equivalent of an average, or mediocre, rating," "d[id] not rise to the level of an adverse employment action"). Accordingly, Mr. Biasco cannot establish an adverse employment action based on his alleged negative review without showing resulting harm.

    ii. Loss of Bonus

Next, Mr. Biasco contends he faced tangible harm based on his exceeds-expectations rating because, if he had been given the higher achieved-excellence rating, his bonus would have been $750 higher. (Pl.'s Resp. at 10.) Defendant argues that Mr. Biasco was not guaranteed a specific performance award. (Def.'s Reply at 5-6.) However, in response to a request for production of other employees' 2016 performance-based awards or, in the alternative, a stipulation as to awards received, Defendant "stipulate[d] that persons . . . who achieved

REPORT AND RECOMMENDATION - 7

1  excellence for performance year 2016 received an award of $1750. Persons . . . who exceeded
2  expectations for performance year 2016 received $1000 as a monetary award." (Pl.'s Resp., Ex.
3  2 (Dkt. # 38-3) at 4-5.) Thus, Mr. Biasco has met his burden of presenting evidence that he
4  would have received $750 more if he had been awarded the achieved-excellence rating. The loss
5  of $750 is materially adverse, and thus sufficient to show an adverse employment action. *See*
6  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

7      2.    *Exhaustion*

8      Defendant contends Mr. Biasco did not adequately raise his complaints regarding the
9  2016 Final Review before the agency within the EEO process, and thus failed to exhaust his
10 administrative remedies. (Def.'s Mot. at 6-7.) Mr. Biasco argues he raised issues regarding the
11 2016 Final Review in communications with various EEO officers in January, February, and
12 March 2017. (Pl.'s Resp. at 5-6.)

13     "In order to bring a Title VII claim in district court, a plaintiff must first exhaust her
14 administrative remedies." *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001). "In
15 cases where a plaintiff has never presented a discrimination complaint to the appropriate
16 administrative authority, . . . the district court does not have subject matter jurisdiction." *Id.* at
17 708. "While it is true that an employment discrimination charge is to be construed liberally and
18 an employee need not make allegations with legal precision, the charge must at least be sufficient
19 to notify the agency that employment discrimination is claimed." *Id.* at 710.

20     Here, there is no dispute that Mr. Biasco has exhausted his administrative remedies with
21 respect to certain issues. (*See* EEOC Letter.) The question, however, is whether the specific
22 claims before this Court were raised within that administrative process. As discussed above, the
23 only adverse employment action Mr. Biasco identifies is the exceeds-expectations rating in his

REPORT AND RECOMMENDATION - 8

2016 Final Review, which resulted in a loss of $750 in a bonus award. (*See* Pl.'s Resp. at 10.) Therefore, the Court must determine whether Mr. Biasco sufficiently presented to the agency his claim that the exceeds-expectations rating and resulting loss of bonus were retaliatory.

On January 30, 2017, Mr. Biasco wrote an email to Willisa Donald, DHS Director of the Office of Equal Rights, stating that "in [his] final review [he] received (Exceeded Expectations) however, the [supervisor] placed several comments . . . that make [his] performance appear completely unacceptable."[6] (Hoar Decl., Ex. D (dkt. # 37-4) at 2-3.) This appears to be a reference to comments by supervisor Sharon Loper in the 2016 Final Review, stating: "Communication and monitoring/evaluating/assigning work needs improvement to retain exceeded expectation as the performance trended lower this [calendar year]." (2016 Final Review.) Mr. Biasco appeared satisfied with the rating but complained about the accompanying comments. Thus, Mr. Biasco's January 30, 2017 email did not raise issues with the exceeds-expectations rating.

On January 31, 2017, Mr. Biasco forwarded his January 30, 2017 email to Rodney Grant, his "assigned EEO counselor," and stated that he has "had additional harassment and would like to add it to [his September 2016 Claims]." (Pl.'s Resp. at 4; Hoar Decl., Ex. D at 2.) This email also fails to raise any issue regarding the exceeds-expectations rating.

On February 3, 2017, Mr. Biasco emailed Ms. Donald with further allegations against his supervisor, Ms. Loper, the Acting Regional Administrator ("A-RA") of Region X ("RX"):

> **Yesterday I learned that A-RA Sharon Loper directed RX Regional Counsel David Smith to hide outside A-RA's door during my end of year performance review and eaves drop.** Her goal was to try to force me into a conduct issue to have a basis for having me removed and have counsel document and corroborate

---

[6] The parties agree that, while Ms. Donald was not an EEO counselor, she was sufficiently "logically connected with the EEO process" that contacting her satisfies the regulatory requirement of consulting a counselor. (Def.'s Mot. at 4 n.3 (quoting *Kraus v. Presidio Trust Facilities Div.*, 572 F.3d 1039, 1045 (9th Cir. 2009)); *see also* Pl.'s Resp. at 7.)

>the information. This performance year I exceeded expectations, under Mrs. Loper I have had an excels and all exceeds expectations. This was while she was under supervision of an RA. Previous to Mrs. Loper getting the Deputy RA position I had all ratings at the top level. There is absolutely no basis to treat a Director with this type of record in this manner but for a pattern of retaliatory harassment. Do we direct counsel to eaves drop on all exceeds expectation employee reviews? I am quite certain this only pertains to me.

(Hoar Decl., Ex. D at 3 (emphasis in original).) While Mr. Biasco briefly mentioned his exceeds-expectation rating, it appears to be only for the purpose of establishing that he was an exemplary employee. This communication does not adequately present the complaint that his exceeds-expectation rating was retaliatory.

In a March 10, 2017 letter to Ms. Donald discussing his September 2016 Claims, Mr. Biasco stated that the agency's "limited and narrow" description of his complaint was "inaccurate and insufficient[.]" (Pl.'s Resp., Ex. 8 (dkt. # 38-9) at 1 (emphasis omitted).) Mr. Biasco claimed he faced a "historical pattern of retaliation" since 2011. (*Id*.) He complained of "using [his] seating location as a performance metric" and "[l]ower[ing his] performance ratings based on unconfirmable statements." (*Id.* at 2.) These statements appear to relate not to his 2016 Final Review but to his 2016 Third Quarter Review, in which Mr. Biasco claims he "was admonished from sitting in the same seat, sitting next to the door in meetings, and because other directors complained about . . . [his] communication style." (*See* Hoar Decl., Ex. D at 2.)

Also in the March 10, 2017 letter to Ms. Donald, Mr. Biasco complained about "[d]irecting regional counsel to hide outside the . . . door during [his] performance review[,]" apparently a reference to the eavesdropping incident Mr. Biasco complained of in his February 3, 2017 email. (Pl.'s Resp., Ex. 8 at 2.) The March 10, 2017 letter fails to raise any complaint about the exceeds-expectations rating.

REPORT AND RECOMMENDATION - 10

On March 17, 2017, Mr. Biasco filed a motion before the EEOC for default judgment regarding his September 2016 claims on the grounds that FEMA had failed to timely begin an investigation. (Pl.'s Resp., Ex. 14 (dkt. # 38-15).) Mr. Biasco provides a copy of that motion in his response to Defendant's Motion, with the following complaints highlighted:

1. Basing Complainant's 2017 performance review on where he sits in meetings while not subjecting any other director or employee to those standards.
2. Claiming several division directors complain about my communication when not a single director confirmed her story and that was used to lower my performance appraisal.
3. Directing an attorney to hide behind a door during my performance appraisal to find information to have me removed. The attorney refused and this incident has been documented at HQ.

(Pl.'s Resp., Ex. 14 at 15.) However, these statements raise the same complaints as the March 10, 2017 letter to Ms. Donald. None of these statements referred to the exceeds-expectations rating or made clear that Mr. Biasco was claiming retaliation specifically based on his exceeds-expectations rating.

Scrutinizing both March communications, it appears Mr. Biasco made vague statements that may have referred to his 2016 Final Review. In the March 10, 2017 letter to Ms. Donald, at the end of a paragraph claiming his supervisor criticized him for minor typographical errors, Mr. Biasco stated that "[t]his year [his] performance review was downgraded a level." (Pl.'s Resp., Ex. 8 at 10.) In his default judgment motion before the EEOC, Mr. Biasco stated the "loss of compensatory time and lowered performance review directly affect [his] pay[.]" (*Id.*, Ex. 14 at 6.) However, Mr. Biasco's vague statements, made in passing and left unexplained, were insufficient to put the agency on notice that he was claiming retaliation specifically based on his exceeds-expectations rating.

REPORT AND RECOMMENDATION - 11

The Court concludes Mr. Biasco failed to adequately notify the agency of claims based on the exceeds-expectations rating in his 2016 Final Review. The EEOC Letter further supports the Court's conclusion. It clarifies that the claim Mr. Biasco raised in the EEOC proceedings was whether FEMA engaged in prohibited retaliation when, "on June 22, 2016, [FEMA] denied his advance request for compensatory time for travel." (EEOC Letter at 12.) The EEOC "issued a default judgment against [FEMA] as a sanction for its 'extraordinary failure to investigate [Mr. Biasco's] claim of discrimination as required by regulation.'" (*Id.* at 13.) Mr. Biasco appealed the ruling, arguing that he was alleging "many years of continued harassment" in addition to the compensatory time claim, but the EEOC found "that the record did not reflect that [Mr. Biasco] disputed the framing of his complaint[.]" (*Id.*) The only claim Mr. Biasco fully exhausted related to compensatory time in June 2016.

The Court concludes Mr. Biasco has provided evidence of an adverse employment action. However, as discussed above, because he did not properly present the issue of the exceeds-expectations rating, or the resulting $750 loss of bonus, to the agency, any claim of adverse employment action remains unexhausted. Accordingly, the Court recommends Defendant's Motion be granted.

### IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion (dkt. # 36) be GRANTED and that Plaintiff's Complaint (dkt. # 1) and this action be DISMISSED without prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your

right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 9, 2022**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Robert S. Lasnik.

Dated this 22nd day of November, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge